The opinion of the Court was delivered by
Johnston, Ch.
The bill, in this case, was filled for the partition of lands whereof Thomas Palmer died intestate. The plaintiff lays claim to one-third of the land by purchase from the widow, and to a distributive share of the remaining two-thirds as one of the children of the decedant. The bill states the death of the intestate, describes the premises of which he seeks partition, and states the names and number of children left by the intestate, all of whom are made defendants.
On the part of James Palmer, (one of the children) who had died, and whose family were made defendants in his right, a defence was set up that he (James) had purchased, at sheriff’s sale, all the interests of the plaintiff in the premises, which he sought to have partitioned off to him; and that the plaintiff had, by other conveyances, parted from all right in the premises.
After the bill was filed, the plaintiff obtained an order of the 18th of June, 1852, giving him leave to amend his bill, and on the 29th of May, 1853, deposited with the Commissioner an amendment setting forth that two of the persons (Mrs. Ortner and another) stated in the bill to be children and distributees of Thomas Palmer, were illegitimate, and therefore not entitled to distributive shares. No subpoena was taken out to answer the *152 amendment; nor was any order published against these children, who lived out of the State.
At the hearing, nothing was said of this amendment until the cause was on trial. In the course of the hearing, the plaintiff’s counsel moved to file it, nunc pro tunc. Mrs. Órther’s counsel objected, on the ground, that his client had no notice of it, up to that moment, nor had she an opportunity to answer it. The motion was refused. The cause proceeded, and resulted in a decree, (which accompanies this opinion,) (a) establishing *153 the fact, that by sheriff’s sale, and various conveyances, the plaintiff was stripped of all interest in the land, and of course of all right of partition; and the bill was dismissed.
It is altogether unnecessary to consider whether the plaintiff was entitled to his motion to file his amendment, so long as that decree remains unreversed. The plaintiff has not ventured to appeal from the. decree; and it is certainly very extraordinary on his part to ask this Court, as he does in his 2d ground, to *154 vacate a decree, whose correctness he does not question, and equally extraordinary to desire us to allow an amendment to be filed, touching the portions of the distributees, in the face of a solemn and unquestioned adjudication, that he has no interest in the matter.
It is ordered that the appeal be dismissed.
Dunkin, Dargan and Wardlaw, CC., concurred.

Appeal dismissed.

 Tho circuit decree in this case, is as follows :
Dunkin, Ch. The purposes for whioh thes.e proceedings were instituted, will most properly appear from a full copy of the bill filed 29th April, 1851. The matter to which tho Court deems it most necessary to address itself, is the claim of the complainant to the land on which the defendants, Sarah Palmer, Samuel Sumner and his wife, Charlotte Sumner, are alleged to have committed waste, and against whom, as well as against the other defendants, a writ of partition of said premises is craved. It may be, however) premised, that it is only in reference to these premises that any specific relief is asked. It is conceded that the land originally belonged to Thomas Palmer, (the father of the plaintiff,) who died about the year 1800, leaving a widow, Elizabeth, and several children. The widow died in 1846. The plaintiff insists that he is entitled to the widow’s one-third, under a deed from her, dated in 1834; and, also, to a distributive share of the other two-thirds. The defendants above named, are the devisees of James Palmer, deceased, a brother of the plaintiff. His will was admitted to probate, 19th February, 1845.
The deed of January, 1834, is an absolute conveyance to the plaintiff by his mother, of her one-third of the tract on whioh 11 she then resided, and to which she was entitled, as the widow of her late husband, Thos. Palmer, deceased.” On the 5th July, 1843, the Sheriff of union District, under and by virtue of an execution against the complainant, Elisha Palmer, at the suit of Edwards and darning levied on “ all the interest of the said Elisha Palmer, in two hundred and eighty acres of land belonging to the estate of his father, whereon his mother then livedand on the 7th February, 1843, the same was duly sold, and purchased by James Palmer, for the sum of one hundred dollars, who accordingly paid to the sheriff tho purchase money, which was applied to the eldest executions in his office against Elisha Palmer, being those of John T. Murrel and william. It. Wil-hem. So far as the Court can perceive, this would be an end of the complainant’s case in this Court, as made by the bill. Whatever interest he had in the premises, was purchased and paid for by the party under whom the defendants derive title. But the plaintiff put in evidence, a paper in these words, “ South-Carolina, ünion District: I, James Palmer, have bid off Elisha Palmer’s interest in his mother’s land, for one hundred dollars, which interest I bind myself to let Elisha Palmer have his interest back when he pays me the sum of one hundred dollars. This 10th Feb. 1843.
(Signed) JAMES PALMEE,”
C. WILSON.
*153 Clinton Wilson testified that he drew the body of the paper — that it was signed by James Palmer, and delivered to the plaintiff, but that the name', C. Wilson, was not his signature. Although this paper was thus in evidence, it constitutes no part of the pleadings, or of the plaintiff’s case, as made in the bill. It-is not charged that any such agreement was made — or, that the plaintiff had complied with it — or that he was ready to comply with it The defendants insisted that if any such agreement was made, it was nudum pactum. But they further insisted that the money had never been returned The plaintiff offered in evidence from the record of the Court of Sessions, the copy of a receipt in the following words: “Received of Elisha Palmer, in full of all demands, from beginning of dealings up to this date, October 10th day, 1844, (signed) James Palmer.” It appeared from evidence of A. W. Thomson, JSsq., that after the death of James Palmer, his widow, Sarah Palmer, who had administered with the will annexed, instituted a suit in the sum. pro. jurisdiction, against Elisha Palmer on a note given to the testator. On the trial, this receipt was offered in evidence. The genuineness of the paper was challenged, witnesses were examined, and a decree was given for the plaintiff, Sarah Palmer, adm’x. Mr. Thomson further testified, that “ it seemed to him, that after the trial of the sum. pro., Elisha Palmer was in the act of leaving the Court House, with the receipt — that it was taken from him, and impounded. Witness was not sure, not distinot about it — is confident that the receipt has never been in his (witness’) possession since the trial of the indictment, and thinks it was correctly copied in the indict ment.” After the trial on the sum. pro., Elisha Palmer was indicted for forgery. Several witnesses were examined, and the defendant was found not guilty. The Clerk of the Court testified that he had searched the office, and found the indictment warrant and recognizances, but had neyer been able to find the original receipt.
The witness, Clinton Wilson, further testified that, in Eebruary, 1843, after the purchase by James Palmer, he (witness) bought from Elisha Palmer, his interest in the land under the deed of 1834. It was assigned to Mcliure and Wilson in Eebruary, 1843. Witness was aware that James Palmer had consented to let Elisha Palmer have the land back at the bid, and the witness bought, thinking Elisha Palmer Would be able to pay the bid. They afterwards found their assignment was of no account, and have set up no claim to the land.
On the 7th January, 1847, the complainant, Elisha Palmer, being in jail, under a ca. sa., issued at the suit of Edwards and Gaming, filed under oath a schedule “ of all his goods and effects, and, also of all the choses in action that he owned, or was entitled to in any manner whatever.” This consisted, besides some unimportant articles, “of all the right, title and interest, I may have in all that piece, parsel or tract of land, whereon *154 James Palmer lived and died, or of any other land that I may have.” On the following day, (8th January, 1847,) the plaintiff; by an instrument under his hand and seal, assigned and set over to the said Edwards and Gaming, the contents of his said schedule subject to prior liens.
This evidence would present very serious difficulties, if the plaintiff had presented in his hill any case arising out of the paper, 10th February, 1843. But the plaintiff has presented no such case. His interest in the land was sold by the sheriff, and the proceeds applied to the payment of his debts, nearly ten years before his bill was filed. After-wards his right under the deed of 1834, was assigned for valuable consideration, to MeLure & Wilson, and finally, all right in law and equity was assigned to Edwards & Gaming in January, 1847. ünder this state of facts, it is unnecessary to pursue other inquiries presented by the evidence which would too probably prove more painful in the investigation than difficult of solution. The plaintiff is evidently a person of feeble intellect ; nor is the cunning ascribed to him by some of the witnesses, at all inconsistent with a low grade of understanding. His folly, or his fault, has involved him in a maze of litigation, and it is not surprising that he should become confused as to his own position. But the Court is unable to extricate him. His own acts have, unfortunately for him, furnished the most conclusive reply to the arguments advanced in his behalf.
It is ordered and decreed that the bill be dismissed.